UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                          :
ANDREA K. TANTAROS,                 :
                                                          :
                             Petitioner,    :
                                                          :            25-CV-961 (VSB)
              - against -                :
                                                          :            **OPINION & ORDER**
FOX NEWS NETWORK, LLC, *et al.*,    :
                                                          :
                             Respondents.  :
                                                          :
------------------------------------------------------- X

Appearances:

Andrea K. Tantaros
andreanaktantaros@tutanota.com
*Pro Se Petitioner*

Paul C. Evans
Krissy A. Katzenstein
Paul Hastings LLP
New York, NY
*Counsel for Respondents Fox News Network, LLC; Suzanne Scott; Irena Briganti; Dianne Brandi*

Marion Joyce Bachrach
Elliot Archer Magruder
Jonathan Nassau Halpern
Holland & Knight LLP
New York, NY
*Counsel for Respondent William Shine*

VERNON S. BRODERICK, United States District Judge:

      Before me is pro se Petitioner's request for a temporary restraining order and preliminary injunction in connection with her amended petition, (Doc. 6), and Respondents' motion to

dismiss, (Doc. 37).[1]  For the reasons that follow, the motion for a temporary restraining order and preliminary injunction is DENIED and the motion to dismiss is GRANTED.

I. **Factual Background**

Petitioner and Respondent Fox News Network, LLC ("Fox News") entered into Petitioner's third employment contract (the "Employment Contract") on August 17, 2014. (Doc. 6 ("Am. Pet.") ¶ 59.)  The Employment Contract contained an arbitration clause (the "Arbitration Clause"), which states, in relevant part:  (1) that Employment Contract-related controversies, claims, or disputes will be brought before a "mutually, selected three member arbitration panel" and (2) that the arbitrators "shall issue a full, written opinion setting fourth [*sic*] the reasons for their decisions." (*Id.* ¶ 22.)

Beginning from around August 2014 to February 2016, the parties were involved in a dispute regarding Petitioner's "internal complaints" of sexual harassment and retaliation. (Am. Pet. ¶¶ 18, 23.)  On May 11, 2016, Fox News filed a demand for arbitration. (*Id.* ¶ 25; *see* Doc. 39 ¶ 7.)  Petitioner has since engaged in a nine-years-long arbitration proceeding (the "Arbitration") before the American Arbitration Association (the "AAA"). (Am. Pet. at 1; *id.* ¶ 9.) According to Petitioner, this Arbitration is fraught with "unprecedented, myriad violations of both Federal and State laws, precedent and AAA Rules and Protocols." (*Id.* ¶ 9.)

Petitioner makes various factual allegations regarding the Arbitration.  First, the current panel of arbitrators was not mutually-selected, despite the terms of the Arbitration Clause requiring a "mutually, selected three member arbitration panel." (Am. Pet. ¶¶ 22, 29.)  In the initial panel, only one arbitrator, Loretta M. Gatswirth, was agreed upon, while Howard Edelman and Michael G. Berger were "unilaterally decided" by the AAA as the other two arbitrators.  (*Id.*

---

[1] Respondent Shine's motion for leave to join the other respondents' motion to dismiss and accompanying memorandum of law is GRANTED.

2

¶ 25.) The AAA also decided that Edelman would act as Chairman of the arbitration panel. (*Id.*) Gatswirth was later "suddenly removed" and replaced by Dennis M. Cavanaugh, again unilaterally by the AAA. (*Id.* ¶ 32.) Second, the arbitrators have conflicts of interest that preclude a proper arbitration. (*Id.* ¶¶ 29–35.) Third, the arbitrators "repeatedly ordered Petitioner to sign" a non-disclosure agreement ("NDA") drafted by Respondents in violation of New York law. (*Id.* ¶¶ 36–38.) Fourth, the arbitrators have demonstrated bias toward Petitioner, as evident in, among other things, holding Petitioner to a higher standard for certain motions, or issuing orders without thoroughly explaining their reasoning. (*Id.* ¶ 42.) For example, the arbitrators improperly dismissed the Estate of Roger Ailes (the "Estate") from the Arbitration. (*Id.* ¶ 54.) As another example, the arbitrators have held only four status conferences, despite Petitioner's repeated requests during the nine years of arbitration, and have even canceled a scheduled meet-and-confer at the last minute, without providing any justification. (*Id.* ¶¶ 44, 47.) The arbitrators have also issued an order authorizing Respondents to illegally receive Petitioner's personal devices from a Canadian cybersecurity firm tasked with conducting forensic analyses of her devices. (*Id.* ¶ 48.) Fifth, the arbitrators have improperly billed Petitioner for arbitration costs, despite the full panel of arbitrators not working on the Arbitration. (*Id.* ¶ 53.)

Petitioner also makes a variety of factual allegations relating to the Employment Contract and the Arbitration Clause. First, Petitioner signed the Employment Contract, which contains the Arbitration Clause at issue, while engaged in negotiations where she had "no leverage" and was told that "'everyone is replaceable.'" (Am. Pet. ¶ 60.) These negotiations also took place around the same time that Petitioner was being sexually harassed and retaliated against by Roger Ailes, the former Chief Executive Officer ("CEO") of Fox News who is now deceased. (*Id.* ¶¶ 25, 60.) Second, the Estate of Roger Ailes "failed to file confidential information pertaining to the

3

arbitration under seal," which purportedly constituted a material breach of a confidentiality provision of the Employment Contract. (*Id.* ¶ 54.) Third, Fox News failed to provide Petitioner with a personal assistant, despite being required to do so by the Employment Contract. (*Id.* ¶ 59.) Fourth, the AAA failed to disclose certain information about the Arbitration panel and improperly billed Petitioner, purportedly in violation of the Arbitration Clause. (*Id.* ¶ 58.) Finally, Fox News entered into a settlement agreement around June 2021 with the New York City Commission on Human Rights ("NYCCHR") to resolve an investigation into Fox News' alleged culture of sexual harassment and retaliation. (*Id.* ¶ 55.) As part of that settlement agreement (the "Conciliation Agreement"), Fox News was required to forgo mandatory arbitration over NYC Human Rights Law-claims for four years. (*Id.*)

## II. Procedural Background

On February 3, 2025, pro se Petitioner Andrea K. Tantaros ("Tantaros" or "Petitioner") filed a petition for temporary restraining order ("TRO") and preliminary injunction ("PI") to halt the Arbitration and to render the Arbitration Clause unenforceable. (Doc. 1.) On February 4, 2025, Petitioner filed an amended petition for TRO/PI (the "Amended Petition") to render the Arbitration Clause unenforceable, and to remand this case out of arbitration to federal court, against Respondents Fox News, Suzanna Scott, Irena Briganti, Dianne Brandi, William Shine, Elizabeth Ailes on behalf of the Estate of Roger Ailes (collectively, the "Respondents"). (Doc. 6 ("Am. Pet.").) Petitioner makes several arguments in her Amended Petition. First, Petitioner claims that the Arbitration must be enjoined due to the arbitrators' conflicts of interest, improper imposition of an NDA, bias and procedural misconduct, and excessive billing. (*Id.* ¶¶ 29–53.) Second, Petitioner contends that the Arbitration Clause is unenforceable because certain Respondents and arbitrators materially breached the Arbitration Clause, Petitioner agreed to the

4

Arbitration Clause under duress, and Fox News violated the Conciliation Agreement.  (*Id.* ¶¶ 54–60.)

On February 5, 2025, I issued an order stating that "I will not grant [pro se Petitioner's] ex parte request for a temporary restraining order and preliminary injunction when the Amended Petition has not been served on Respondents," and directed Petitioner to serve the Respondents with the Amended Petition.  (Doc. 9.)  On March 21, 2025, Respondents Fox News Network, LLC; Dianne Brandi; Irena Briganti; and Suzanne Scott (collectively, the "Fox Respondents") filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), (Doc. 37), a supporting memorandum of law in support of their motion to dismiss and in opposition to Petitioner's request for a TRO, (Doc. 38 ("Mem.")), and a supporting declaration, (Doc. 39).  That same day, Defendant William Shine filed a letter motion for leave to join the Fox Respondents' motion to dismiss and accompanying memorandum of law.  (Doc. 40.)  On March 28, 2025, Petitioner filed a reply brief in support of her TRO request and in opposition to the Fox Respondents' motion to dismiss, (Doc. 42 ("Opp'n")), and a supporting declaration, (Doc. 43).  Respondent Elizabeth Ailes ("Elizabeth Ailes"), on behalf of the Estate, has not appeared in this motion and did not file a response to the Amended Petition.[2]

### III.  Legal Standard

To obtain a preliminary injunction, the movant "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter v.*

---

[2] Counsel for the Estate filed a letter stating that "the Estate was dissolved and wound up years ago" after its assets were distributed pursuant to a Florida probate court's order.  (Doc. 28 at 1.)  The parties then exchanged several response letters.  (Docs. 35, 36, 44.)  Petitioner also filed a motion for alternative service as to the Estate, (Doc. 26), which is pending.  Because this Opinion & Order dismisses this case, I need not resolve that motion.

5

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Id.* at 345–46 (quoting *Winter*, 555 U.S. at 24). The standard for a preliminary injunction is the same as for a temporary restraining order. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases).

In order to obtain a preliminary injunction, a movant must demonstrate: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) the balance of hardships tips in his favor, and (4) that the public interest would not be disserved by the issuance of an injunction." *Bragg v. Jordan*, 669 F. Supp. 3d 257, 266 (S.D.N.Y. 2023). "Where a party seeking a temporary restraining order fails to establish a likelihood of success on the merits, 'there is no need to address the other prongs of the analysis.'" *Id.* at 267 (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).

## IV. Discussion

Petitioner requests I issue a temporary restraining order to "halt" the Arbitration for two reasons. (Am. Pet. 1–2.) First, Petitioner claims arbitrator bias and misconduct in violation of the Federal Arbitration Act ("FAA"). (Am. Pet. ¶¶ 25–53.) Second, Petitioner argues that the Arbitration Clause itself is unenforceable. (*Id.* ¶¶ 54–60.) Both arguments fail because Petitioner fails to demonstrate a likelihood of success on the merits.

### A. Arbitrator Bias and Misconduct

Petitioner claims that the arbitrators had undisclosed conflicts of interest, exceeded their authority in ordering Petitioner to sign an NDA, displayed bias and engaged in procedural misconduct, and billed excessive fees in violation of 9 U.S.C. § 10(a). (Am. Pet. ¶¶ 25–53.) These claims fail as a matter of law because the Arbitration panel has not issued any final award or decision that can be vacated.

6

In alleging arbitrator bias and misconduct, Petitioner cites to Section 10 of the FAA. (*See* Am. Pet. at 2 (alleging "violations under the Federal Arbitration Act"); Reply 3 (discussing "FAA-specific grounds under 9 U.S.C. § 10(a)(2)–(3) now before the Court").) Even for the claims that do not explicitly cite Section 10, construed liberally, pro se Petitioner's allegations relate to Section 10 of the FAA in alleging "evident partiality or corruption in the arbitrators," arbitrator "misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy," "prejudice[]," or that "the arbitrators exceeded their powers." *See* 9 U.S.C. § 10(a)(2)–(4). I therefore construe the Amended Petition to make claims under Section 10 of the FAA.

Crucially, however, Section 10 governs motions to vacate an arbitration award, *see* 9 U.S.C. § 10(a) (allowing courts to "make an order vacating the award upon the application of any party to the arbitration"), and says nothing about enjoining an ongoing arbitration proceeding prior to any award. The Second Circuit is clear that "[a]lthough the FAA provides that a court can vacate an award 'where there was evident partiality or corruption in the arbitrators,' . . . it does not provide for pre-award removal of an arbitrator." *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (quoting 9 U.S.C. § 10(a)(2)) (citation modified). In other words, "it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Id.* (internal quotation marks omitted).

As of the date that Respondents moved to dismiss on March 21, 2025, "no final award has been rendered." (Mem. 2.) Indeed, no party has notified me that any such final award was issued by the Arbitration panel during the pendency of the instant motions, so Petitioner's claims fail at the outset. *See SH Tankers Ltd. v. Koch Shipping Inc.*, No. 12-CV-375, 2012 WL 2357314,

7

at *4 (S.D.N.Y. June 19, 2012) (denying petition for vacatur of arbitration ruling because it was not a final arbitration award). In order to argue arbitrator bias, Petitioner "'must proceed with arbitration and raise any objections in a motion to vacate the award.'" *PK Time Grp., LLC v. Robert*, No. 12-CV-8200, 2013 WL 3833084, at *2 (S.D.N.Y. July 23, 2013) (quoting *Diemaco v. Colt's Mfg. Co.*, 11 F. Supp. 2d 228, 234 (D. Conn. 1998)). Accordingly, Petitioner's claims under Section 10 fail.

Outside of the Section 10 context, courts "may set aside an arbitration award if it was rendered in manifest disregard of the law." *See Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted). "An arbitration award 'manifestly disregards the law,' however, 'only in those exceedingly rare instances where' '(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case.'" *Key Inv. Servs. LLC v. Oliver*, No. 23-7326, 2025 WL 1523350, at *2 (2d Cir. May 29, 2025) (summary order) (quoting *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023)). The manifest-disregard doctrine "is considered one of last resort." *Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co.*, No. 16-CV-1914, 2019 WL 1171564, at *4 (S.D.N.Y. Mar. 12, 2019) (internal quotation marks omitted), *vacated in part on other grounds*, 838 F. App'x 649, 651 (2d Cir. 2021). Indeed, even a "manifest disregard of the evidence" does not warrant vacatur of an arbitration award. *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (internal quotation marks omitted).

As an initial matter, there is no arbitration award that can be set aside for manifest disregard of the law. *Cf. Pearl Seas Cruises, LLC v. Irving Shipbuilding, Inc.*, No. 11-CV-201, 2011 WL 3475469, at *2–3 (D. Conn. Aug. 9, 2011) (dismissing petition to vacate partial

8

arbitration award under Section 10(a) as non-justiciable because no final award was issued); *Kumaran v. Nat'l Futures Ass'n*, No. 20-CV-3668, 2023 WL 7351800, at *2 (S.D.N.Y. Oct. 20, 2023) (denying request for preliminary injunction to enjoin ongoing arbitration award because "no arbitration award has yet been issued"), *report and recommendation adopted sub nom. Kumaran v. Adm Inv. Servs., Inc.*, 2023 WL 7328136 (S.D.N.Y. Nov. 6, 2023). In any event, even if I were to credit Petitioner's allegations and construe them liberally, the Amended Petition is silent on which specific laws, other than the FAA,[3] are being manifestly disregarded by the arbitrators. Petitioner's claims appear to amount to a disagreement with the arbitrators' decisions so far in the Arbitration, and she fails to demonstrate that this case is one of the "exceedingly rare instances," where vacatur is warranted. *Oliver*, 2025 WL 1523350, at *2.

To summarize, Petitioner cannot demonstrate that the arbitrators' alleged bias and misconduct warrant vacatur of an arbitration award as a matter of law under Section 10 of the FAA, nor can she establish an arbitration award be set aside because it was rendered in manifest disregard of the law because no such arbitration award exists. Because the arbitral process is not yet complete, Petitioner's claims here fail. To the extent Petitioner argues that the Arbitration was improper, on whatever basis, "she may seek review in court," as contemplated by the FAA, "[u]pon completion of the arbitral process." *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 411 (S.D.N.Y. 2016). In addition, to preliminarily enjoin an ongoing arbitration proceeding before any such award is rendered would run counter to the Supreme Court's "pro-arbitration

---

[3] Petitioner argues that the arbitrators' order for Petitioner to sign an NDA violates the New York General Obligations Law § 5-336 and N.Y. CPLR 5003-b. (Am. Pet. ¶¶ 36–39.) However, both New York statutes govern non-disclosure provisions in the context of a settlement agreement. *See Separ v. Cnty. of Nassau*, No. 21-CV-00010, 2025 WL 51206, at *1 (E.D.N.Y. Jan. 8, 2025) ("Since the settlement involves a non-disclosure provision in the context of the resolution of discrimination claims, both N.Y. General Obligations Law 5-336 and N.Y. C.P.L.R. 5003-B apply, providing a 21-day preference period, along with a 7-day period to revoke the agreement."). Here, there is no settlement agreement, so Petitioner fails to show a likelihood of success on the merits of her argument that an NDA she is directed to sign as a condition of arbitration demonstrates the arbitrators' manifest disregard of the law.

9

policies." *Cf. Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990) ("Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute.").

Accordingly, Petitioner's request to enjoin the Arbitration due to the arbitrators' alleged bias, misconduct, or unauthorized authority is DENIED.

### B.   *Enforceability of the Arbitration Clause*

Petitioner next claims that the Arbitration should be enjoined because the Arbitration Clause is not enforceable. Specifically, Petitioner alleges that (1) certain Respondents and the AAA materially breached the Employment Contract, which also contains the Arbitration Clause, (*see* Am. Pet. ¶¶ 54, 56, 59)[4], (2) she signed the Employment Contract under duress, (*id.* ¶ 60), and (3) Respondent Fox News violated the Conciliation Agreement with the NYCCHR regarding sexual harassment, retaliation, and hostile work environment, (*id.* ¶ 55). Each of Petitioner's arguments fail.

First, Petitioner contends that certain Respondents, as well as the arbitrators and the AAA, materially breached different provisions of the Employment Contract. Specifically, Petitioner argues that Elizabeth Ailes, on behalf of the Estate of Roger Ailes, breached a confidentiality provision located in the Arbitration Clause, thereby rendering the Arbitration Clause unenforceable. (Am. Pet. ¶ 54.) Petitioner alleges that the Estate initiated an action to stay the Arbitration in New York state court and filed confidential information in that case, thereby breaching the confidentiality provision. (*Id.*) Petitioner also claims that Fox News breached the Employment Contract by failing "to provide a personal assistant to Petitioner" even after promising to do so. (*Id.* ¶ 59.) Finally, Petitioner alleges that the arbitrators and the AAA

---

[4] The Amended Petition does not seem to contain paragraphs 57 and 58.

10

materially breached the Arbitration Clause by "preventing Petitioner from having an equitable opportunity to select unbiased Arbitrators." (*Id.* ¶ 56.)

Petitioner's claims are without merit. Whether any party here has breached a provision of the Employment Contract has no bearing on whether Petitioner's claims should proceed in arbitration. The Supreme Court has made clear two relevant points: "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). Regardless of whether any other provision of the Employment Contract was breached, that provision would be severable from the arbitration provision. Petitioner cannot challenge the Arbitration Clause by simply arguing that other provisions were breached. Similarly, Petitioner's claim that the Estate breached the confidentiality provision of the Arbitration Clause—which states that any breach of confidentiality constitutes a material breach of the Employment Contract overall, (Am. Pet. ¶ 22)—is not a challenge to the applicability of the Arbitration Clause itself. Petitioner's invocation of the confidentiality provision is not, in essence, a challenge to the Arbitration Clause, and is actually a challenge to the Employment Contract overall for material breach.

Petitioner next claims that the entire Employment Contract is void because she signed it under duress. (Am. Pet. ¶ 60.) "In New York, a contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will." *Doe v. Kogut*, 759 F. App'x 77, 81 (2d Cir. 2019) (summary order) (citation modified). Courts recognize three types of duress: "duress by physical compulsion, duress by threat, or duress by undue influence." *Gaughan v.*

11

*Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (citation omitted).  Because Petitioner does not allege that she was physically compelled to sign the Employment Contract or threatened to do so, I construe her duress argument based on undue influence.  "To prove undue influence in New York, a party must show: '(1) the existence and exertion of an influence; (2) the effective operation of such influence as to subvert the mind at the time the transaction occurred; and (3) the execution of the transaction that, but for undue influence, would not have happened.'"  *Metro. Life Ins. Co. v. Bradway*, No. 10-CV-0254, 2011 WL 723579, at *5 (S.D.N.Y. Feb. 24, 2011) (quoting *Abercrombie v. Andrew College,* 438 F. Supp. 2d 243, 273 n.27 (S.D.N.Y. 2006)).  The party asserting the undue-influence argument bears the burden to prove it.  *See N.Y. Life Ins. Co. v. Brown*, No. 19-CV-09437, 2021 WL 325857, at *6 (S.D.N.Y. Feb. 1, 2021).

      Petitioner seems to invoke the doctrine of economic duress, whereby "courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury."  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotation marks omitted).  Specifically, Petitioner claims that she was in the middle of negotiations for her third employment contract, and that the Arbitration Clause was part of the "Standard Terms and Conditions."  (Am. Pet. ¶ 60.)  Indeed, Petitioner states:  "With no leverage to negotiate the Standard Terms and Conditions, and a regular and intimidating oral reminder by Ailes that 'everyone is replaceable', Petitioner executed the Employment [Contract]."  (*Id.*)  In other words, Petitioner claims that the duress she suffered was fear of losing her job and the fact that she lacked "leverage to negotiate the Standard Terms and Conditions."  (*Id.*)  The law is clear, however, that "[d]espite the inequality in bargaining power between employers and employees, conditioning employment upon an agreement to arbitrate does not by itself constitute duress."

*Gruber v. Louis Hornick & Co.*, No. 02-CV-5092, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)); *see also Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532, 2018 WL 3579107, at *2 (S.D.N.Y. July 24, 2018) ("Courts have held repeatedly that requiring an employee to sign an arbitration clause as a condition of employment does not constitute economic duress, despite the imbalance in bargaining power."). Further, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (citation and internal quotation marks omitted). Petitioner signed the Employment Contract on August 17, 2014, (Am. Pet. ¶ 22), and does not claim to have repudiated the contract until over two years later when she initiated her state court action on August 22, 2016, (Mem. 2). Accordingly, she has waived her right to claim economic duress. *See VKK Corp.*, 244 F.3d at 123 ("Delays as short as six months have been held to constitute forfeiture of the claim" of economic duress. (citation omitted)).

     Construed broadly, Petitioner's allegations may also suggest that she was under duress by undue influence based on sexual harassment and retaliation. Specifically, Petitioner notes: "During the time which Petitioner was renegotiating her contract, Ailes continued to sexually harass and retaliate against Petitioner for her protected complaints, staunch refusals to engage in sexual conduct and rebuffing of Ailes' sexual misconduct during on-one-one meetings in his office." (Am. Pet. ¶ 60.) Petitioner raises serious allegations that deserve careful scrutiny. However, besides showing a temporal connection that she suffered sexual harassment and retaliation "[d]uring the time [she] was renegotiating her contract," (*id.*), Petitioner fails to meet the "high" "bar for establishing undue influence" to render the Employment Contract voidable. *Metro. Life*, 2011 WL 723579, at *5 (internal quotation marks omitted). Assuming Petitioner's

13

serious allegations are true, she has not provided sufficient details showing that "but for" her sexual harassment and retaliation she would not have signed the Employment Contract. *See id.* Moreover, although Petitioner raises troubling allegations of sexual harassment and retaliation, she fails to connect them to the contract negotiations such that they precluded her "from the exercise of her own free will" in signing the Employment Contract. *Culmone-Simeti v. New York City Dep't of Educ.*, No. 17-CV-02313, 2019 WL 2409736, at *4 (S.D.N.Y. June 7, 2019) (internal quotation marks omitted and alterations adopted). Accordingly, Petitioner's claim of undue influence fails.

Finally, Petitioner argues that the Arbitration Clause is contrary to Fox News' June 2021 Conciliation Agreement with the NYCCHR, which required Fox News to "allow any employee . . . to file any claim brought under NYC Human Rights Law in court or administratively, exempting such claims from the mandatory arbitration clause in Fox employment contracts." (Am. Pet. ¶ 55.) Fatal to Petitioner's argument is the fact that the Conciliation Agreement required Fox News to prospectively modify its arbitration clause for employment contracts. In other words, the Conciliation Agreement does not apply retroactively to Petitioner or her claims. Specifically, the Conciliation Agreement states: "Starting from thirty (30) calendar days after the execution of this Agreement and continuing until four (4) years following the execution of this Agreement, [Fox News] will not include NYCHRL claims in any mandatory arbitration clause in any talent contracts, employment agreements, or Contributor agreements that are executed within that time period." (Doc. 6-16 ¶ 8.) It is undisputed that Petitioner's Employment Contract, which was signed in 2014, predated this June 2021 Conciliation Agreement. Petitioner fails to address this clause or to demonstrate how the Conciliation Agreement applies to her claims.

14

Petitioner fails to demonstrate a likelihood of success on the merits of her claim that the Arbitration Clause is unenforceable.[5]  Accordingly, Petitioner's request to enjoin the Arbitration due to an unenforceable arbitration clause is DENIED.

\*    \*    \*

Petitioner accordingly fails to demonstrate a likelihood of success on the merits.[6]  The motion for a temporary restraining order and preliminary injunction is DENIED.

## V.     Dismissal

In this action, Petitioner does not make any claims of sexual harassment, retaliation, or hostile work environment.  Those seem to be the subject of the Arbitration.  Instead, Petitioner's sole request in this case is for injunctive relief in the form of a preliminary and permanent injunction enjoining the ongoing Arbitration and remanding that case to a federal court, and a

---

[5] Respondents devote much of their arguments regarding the enforceability of the Arbitration Clause on the doctrine of *res judicata*. (Mem. 10–15.) Respondents argued, among other things, that Petitioner's previous case before Judge Andrew L. Carter regarding the arbitrability of Petitioner's sexual harassment claims was dismissed. (*Id.*) In dismissing the case, Judge Carter held that the FAA preempted N.Y. C.P.L.R. § 7515, which prohibited certain arbitration clauses related to sexual harassment claims. *See Tantaros v. Fox News Network, LLC*, No. 19-CV-7131, 2022 WL 4614755, at *1–2 (S.D.N.Y. Sept. 30, 2022). Respondents emphasize that many of Petitioner's claims here—including, among others, that the Arbitration Clause is unenforceable—are identical to those she made in her case before Judge Carter, (Mem. 4–5), which he rejected as "without merit," *see Tantaros, LLC*, 2022 WL 4614755, at *2. n.1. Based on Judge Carter's rejection and the state court's rejection of Petitioner's arguments, Respondents argue that Petitioner's claims are barred by *res judicata*. (Mem. 10–15.) However, in her response, Petitioner does not address these *res judicata* arguments regarding her claim that the Arbitration Clause is unenforceable. (*See* Reply 5–6.) Rather, Petitioner focuses solely on the arbitrators' conflicts of interest, bias, and misconduct. (*See id.*) Accordingly, by failing to address the res judicata arguments regarding her unenforceability claim, she has abandoned it. *See, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, 722 F. Supp. 3d 347, 351 n.1 (S.D.N.Y. 2024) (finding argument abandoned because it was not addressed in reply brief); *Doe v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020) ("Defendants do not respond to this argument in reply, and the Court deems them to have abandoned the argument."). Therefore, I find that Petitioner's claims are barred by the doctrine of *res judicata*. *See Caldwell v. Pesce*, 83 F. Supp. 3d 472, 481 (E.D.N.Y. 2015) ("A district court has not only the power but the obligation to dismiss complaints *sua sponte* on *res judicata* grounds when the litigation history triggers it."), *aff'd*, 639 F. App'x 38 (2d Cir. 2016). However, because Petitioner is pro se, I have analyzed other fatal flaws to establish alternative grounds to reject Petitioner's arguments. *See Evans v. N. Y. City Health & Hosps. Corp.*, No. 21-CV-10378, 2023 WL 5920189, at *4 n.5 (S.D.N.Y. Aug. 7, 2023) (deeming claim abandoned for failure to respond to argument, but still addressing merits of the claims because plaintiff was pro se), *report and recommendation adopted*, 2023 WL 5561145 (S.D.N.Y. Aug. 29, 2023).

[6] Because Petitioner fails to demonstrate a likelihood of success on the merits, I need not opine whether Petitioner has met the other requirements of the preliminary-injunction analysis. *See Bragg*, 669 F. Supp. 3d at 267.

declaration that the Arbitration Clause is unenforceable.  (*See* Am. Pet. at 35 (listing the prayer for relief).)  Because this Opinion & Order resolves all of Petitioner's underlying requests, dismissal is warranted.  *See, e.g.*, *Roddey v. Infosys Techs. Ltd., Inc.*, No. 22-CV-6310, 2022 WL 16700270, at *5 (S.D.N.Y. Nov. 3, 2022) (dismissing action after denying motion to enjoin ongoing arbitration); *Bridgeton 396 Broadway Fee LLC v. Anthony T. Rinaldi LLC*, No. 20-CV-02052, 2020 WL 5983205, at *4 (S.D.N.Y. Oct. 8, 2020) (same).

Further, "[c]ourts have both statutory and inherent authority to *sua sponte* dismiss frivolous suits," which are "those that lack 'an arguable basis either in law or fact.'"  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 119 (2d Cir. 2015) (Korman J., concurring in part and dissenting in part) (quoting *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)).  Indeed, district courts, as "courts of first instance," are "especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000).  Petitioner's claims here, which seek vacatur of an arbitration award that does not exist, lack an arguable basis in both law and fact.  *See, e.g.*, *E. 2 W. Prod. Grp., LLC v. Henry Brown, LLC*, No. 09-CV-1870, 2010 WL 2891190, at *1 (S.D.N.Y. July 15, 2010) (dismissing claim *sua sponte* with prejudice); *Lipin v. Hunt*, No. 14-CV-1081, 2015 WL 1344406, at *9 (S.D.N.Y. Mar. 20, 2015) (same).

Accordingly, Respondents' motion to dismiss is GRANTED and this action is DISMISSED with prejudice.

## VI.    Conclusion

For the reasons stated above, Petitioner's request for temporary restraining order and preliminary injunction, (Doc. 6), is DENIED, and Respondents' motion to dismiss, (Doc. 37), is GRANTED.[7]

The Clerk of Court is respectfully directed to terminate Document 37 (motion to dismiss) and Document 40 (William Shine's letter motion to join the Fox Respondents' motion to dismiss and accompanying memorandum of law), and to close this case.

SO ORDERED.

Dated: August 6, 2025
      New York, New York

*Vernon Broderick*

Vernon S. Broderick
United States District Judge

---

[7] On February 4, 2025, Petitioner consented to receive electronic service through the ECF system. (Doc. 5.)